JAMES E. BOYD, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Injunction:** EFFECT OF THE ORDER. An order of injunction only restrains the defendant or defendants to the action in which the same is issued, and such persons acting in or occupying a subordinate position to him, or them, as may be named, described, or in some manner designated in such order.

2. **Contempt.** Proceedings in contempt are in their nature criminal, and the strict rules of construction applicable to criminal proceedings are to govern therein. *Van Zant v. Arg. Mining Co.,* 2 McCrary, 644.

ERROR to the district court for Douglas county. Heard below before NEVILLE, J.

*John D. Howe,* for plaintiff in error.

*William Leese, Attorney General,* for the state.

COBB, J.

The record in this case discloses the following state of facts: The line and track of the Omaha Horse Railroad runs along and through St. Mary's avenue and across Seventeenth street, in the city of Omaha. At the date of the transactions involved in this action, the city of Omaha was

engaged in constructing a sewer in and along Seventeenth street and across St. Mary's avenue. This work was being done by contract, McHugh, McGavock & Co. being the contractors with the board of public works of said city for the constructing of said sewer. On or about the first day of November, 1882, William W. Marsh, the sole owner of said Omaha Horse Railroad, filed his petition in the district court of Douglas county against said McHugh, McGavock & Co., alleging, among other things, that said contractors were engaged in the constructing of said sewer in and along said St. Mary's avenue and across Seventeenth street; that he, the said plaintiff, had "lately, in order to prevent the tearing up of his track, and thus preventing the running of cars on said avenue, built a bridge eight feet wide and twenty feet long across said Seventeenth street at its intersection with St. Mary's avenue aforesaid, upon which he has laid his said track and is now running his cars; that said sewer is to cross said avenue directly under the center of said bridge and twenty-one feet under the same; that defendants can, with very little trouble, excavate for said sewer under said bridge, but instead of doing so they propose and threaten to tear up said bridge and said track at the intersection of Seventeenth street and St. Mary's avenue, * * * and so stop the running of cars on said line of street cars, to the great and irreparable injury of the plaintiff," etc., with prayer for "judgment against the defendants, perpetually restraining and enjoining them, and each of them, their agents, servants, laborers, and employes, from tearing up said bridge or track at the intersection of Seventeenth street and St. Mary's avenue, in the city of Omaha aforesaid, or in any manner interfering therewith, and that until the final hearing of this action said defendants, and each of them, their agents, servants, laborers, and employes, and each of them, may, by the temporary order of the court, or judge, be restrained and enjoined from tearing up said street car track

and said bridge on St. Mary's avenue at its intersection with Seventeenth street, in said city of Omaha, and from in any manner interfering therewith," and for general relief, etc.

A temporary injunction, in conformity to the prayer of the said petition, was thereupon granted by the judge of said court; and thereupon a summons was duly issued by the clerk of said court, directed to William McHugh and Alexander McGavock, endorsed "Injunction allowed," and served upon the said defendants.

It further appears that on the 11th day of November, 1882, an order was issued by the judge of said court to James E. Boyd, that he "be and appear before the said court at the court-house in the city of Omaha, on Saturday, December 16, 1882, at 10 o'clock A.M., to show cause why an attachment for contempt should not issue against him for a disobedience of the former order of the court in this cause, granting a provisional injunction." The said order having been duly served, the said James E. Boyd appeared in court on the return day thereof; whereupon a cause was duly entered in said court, entitled "State of Nebraska vs. James E. Boyd," and the following entry made therein: "And now comes the said James E. Boyd, on the return day of the order served on him, to show cause why an attachment should not be issued against him for contempt of the court, alleged to have been committed by him in advising and directing and procuring the violation of the injunction issued in the case of William W. Marsh against William McHugh and Alexander McGavock, and after hearing the said James E. Boyd, as showing cause, and the evidence sustaining said charge against him, it is considered by the court that no cause is shown against the issuing of such attachment, and it is ordered by the court that an attachment be issued against the said James E. Boyd to answer for said contempt."

Said attachment being issued, was, on the 23d day of December, 1882, duly returned by the sheriff of Douglas

county, with the said James E. Boyd in custody, before the
court, whereupon the following record was made and en-
tered: "Now comes the said James E. Boyd in custody
of the sheriff, and was examined under oath touching his
alleged contempt; on examination whereof the court do
find that he has been guilty of the same, to which finding
of the court the defendant excepts. It is therefore consid-
ered and adjudged by the court that a fine of two hundred
dollars be and hereby is imposed upon the said James E.
Boyd," etc. Whereupon the cause was brought to this
court on error.

Counsel for plaintiff in error makes several points in his
petition in error and in his brief; but it will only be con-
sidered necessary to examine one of them:

It appears from the record that at the date of these
transactions the plaintiff in error was the mayor of the city
of Omaha, and that whatever connection he had with the
tearing up of the track of the Omaha Horse Railroad, or
the bridge connected with the same, was had and done in his
official capacity as such mayor, and not as the agent, serv-
ant, laborer, or employe of the said William McHugh and
Alexander McGavock, or either of them, and that, in point
of fact, he never occupied either of these or any other re-
lation of privity with them or either of them.

Mr. High defines a writ of injunction to be "a judicial
process, operating *in personam*, and requiring the person to
whom it is directed to do, or to refrain from doing, a par-
ticular thing." In this state, the writ of injunction is abol-
ished, and the injunction provided for is declared by stat-
ute to be "a command to refrain from a particular act."
Comp. Stats., Code, § 250. "It may be the final judgment
in an action, or may be 'allowed as a provisional remedy,
and when so allowed it shall be by order." Id. In either
case, it is a matter personal to the party against whom it is
directed and persons occupying a subordinate relation to
such party. Neither the judgment nor order of injunction

partake of the nature or character of a proclamation. Indeed, it may be said that, ordinarily, courts have to do officially only with parties to suits and legal proceedings before them, while the executive and legislative departments have official relations with the body of the people.

Where the writ of injunction is used it is usually directed to and against the defendant or defendants, and to their counselors, solicitors, attorneys, agents (and when the thing forbidden to be done is in the nature of labor or mechanical work), laborers, servants, and employes. But under our system, where no writ is used, nor even a formal order necessary, the thing enjoined, or to be refrained from, as well as the person or persons bound by the injunction (and who will be punished in a summary manner for a breach of it), will usually be designated by the allegations of the petition, when the injunction is allowed as a provisional remedy, and by the terms of the judgment itself in other cases. Where the allegations of the petition designate, either by name or description, the persons or class of persons who, in a subordinate capacity, under or in privity with the principal defendant or defendants, are about to do the acts which it is the object or intention of the court or judge to enjoin by a provisional or temporary injunction, the persons so designated, as well as the parties defendant who are served with process in the action, as well as those having knowledge or notice of the allowance of the injunction, are bound by it to the extent of being amenable to summary punishment for violating it.

One case, to which my attention has been called, the second case of *Lord Wellesley v. The Earl of Morning-ton*, 11 Beav., 181, seems to recognize a power in the court to punish summarily, as for a contempt of court, a person who as the servant of the defendant had cut certain timber, which the defendant was restrained from cutting, and of which the servant had notice, but where the injunction only run against the defendant and not against

his servants, etc., the court were clear as they had already held in the first case between the same parties, Id., 180, and on the same facts, that they could not punish him for a breach of the injunction, but thought they could for contempt. This is the only case which I have been able to find where it has been held, or declared, that a servant, agent, attorney, or employe could be punished for contempt in doing the thing which the master or principal, as a defendant in the suit, was enjoined from doing, when the defendant only was named in the injunction, or where the person punished was shown not to stand in a subordinate relation to the defendant or defendants. *Underwood's Case*, 21 Tenn. R. (2 Humph.), 45, is cited by counsel for defendant in error as a case where a stranger to the suit was held for contempt in disobeying an injunction. But upon examination it will be seen that one question and one only was presented or decided in that case, which was whether in proceedings for contempt in chancery the statement of the defendant made for the purpose of purging his contempt, may be contradicted by opposing affidavits. It was held that it could, but there was no final decision of the case. In the case at bar "William McHugh and Alexander McGavock, their agents, servants, laborers, and employes," were enjoined, and James E. Boyd had actual notice of such injunction. He was mayor of the city, and as such in pursuance of the purposes and policy of the city he gave such directions to the chairman of the board of public works of the city as led to the doing by other servants of the city of the things which McHugh and McGavock and their servants were enjoined from doing. In doing this the mayor may have laid the city liable to the owner of the horse railroad in damages, or he may be personally liable for such damages. But in either event such liability can only be ascertained and damages collected by due course of law.

I shall not quote authorities but cite the following as

bearing on the point involved : *The People v. Compton and others*, 1 Duer (N. Y.), 555 (of op.)  *Sage and others v. Quay*, 1 Clarke's Chancery, 242.    Rapalje on Contempt, § 47, p. 62.    *Batterman v. Finn*, 32 Howard's Pr., 501. *State v. Cutler*, 13 Kan., 131.    Joyce on Injunc., vol. 2, p. 1327.    *Vanzant v. The Ang. Min. Co.*, 2 McCrary, 643. *Haight v. Lucia and another*, 36 Wis., 355.

A careful consideration of these authorities and others leads me to the conclusion that the district court erred in its judgment that the plaintiff in error was guilty of a contempt of its authority in directing the chairman of the the board of public works of the city to remove the track of the horse railroad for the purpose of proceeding with improvement of the street in question.    Had the plaintiff in the original case desired to bind the city and its officers as well as the contractors by his proceedings in injunction he should have made the city a party to this suit.    Until that was done it may be doubted whether the mayor was not excusable for looking alone to what he conceived to be the public interest of the city.    And a proceeding for contempt in violating an injunction being in its nature criminal, the rules of construction applicable to criminal proceedings must govern it.

The judgment of the district court is reversed and the proceeding dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.