DANIEL D. JOHNSON ET AL. V. CHARLES A. BOUTON.

[FILED DECEMBER 21, 1892.]

1. False Imprisonment: POWER OF COUNTY JUDGE TO PUNISH FOR CONTEMPT: DISOBEDIENCE OF INJUNCTION ALLOWED BY COUNTY JUDGE IN ACTION PENDING IN DISTRICT COURT. A county judge has no power to commit for contempt one guilty of disobedience of an injunction allowed by him in an action in the district court. In such case the contempt is against the district court whose order is defied and not the county judge. MAXWELL, CH. J., dissenting.

2. ————: DEFINITION. False imprisonment is the unlawful restraint of a person without his consent either with or without process of law.

3. ———: MALICE. The question of malice in an action for false imprisonment is immaterial, except so far as it affects the measure of damage.

4. ———: WHO LIABLE. All persons who directly procure, aid, or assist in the unlawful detention are liable as principals.

5. ———: PROOF OF CONSPIRACY UNNECESSARY. It is not necessary to prove a conspiracy to unlawfully imprison, in order to entitle the injured party to recover.

ERROR to the district court for Scott's Bluff county. Tried below before CHURCH, J.

*Lot L. Feltham,* and *J. M. King,* for plaintiffs in error.

* *Greene & Hostetler,* and *M. J. Huffman, contra.*

POST, J.

This was an action for false imprisonment in the district court of Scott's Bluff county, in which defendant in error, plaintiff below, recovered judgment. The material facts in the case are as follows: Johnson, one of the plaintiffs in error, commenced an action in the district court of said county against defendant in error Bouton, seeking to restrain the latter perpetually from diverting the water from Winter's creek, a water-course of said county, to the damage of his (Johnson's) land. In the absence of the district judge therefrom, King, another of the plaintiffs in error, as county judge, allowed a temporary injunction in said case. Subsequently, and while said action was still pending, Johnson, with Feltham, his attorney, appeared before King and charged Bouton with violating the said order of injunction and caused an order to be issued for his (Bouton's) arrest. Subsequently Bouton, who had in the meantime been arrested by virtue of the order aforesaid, was given a hearing by King and adjudged to be in contempt of court. He was accordingly sentenced to pay a fine of $30, and costs, and ordered to give bond in the

sum of $300, conditioned that he would in the future obey said injunction. Failing to satisfy said judgment, or give the required bond, he was by the order of King committed to the custody of the plaintiff in error, Fanning, as sheriff, by whom he was detained eight days. During said time he was in the custody of a deputy sheriff and boarded at the village hotel, except about twelve hours, during which time he was confined in jail. He subsequently commenced an action for damage against Johnson and Feltham, his attorney, King, the county judge, and sureties on his official bond, and Fanning, the sheriff and sureties. On trial in the district court he recovered judgment in the sum of $100 against all the defendants therein except the sureties of King and Fanning, which is the judgment we are called upon to review.

The first and most important question presented is that of the jurisdiction of a county judge to punish as for contempt the disobedience of an order of injunction allowed by him in an action in the district court. The authority for the allowing of an injunction by the county judge in such a case is found in section 252 of the Code, viz.: "The injunction may be granted at the time of commencing the action, or at any time afterward, before judgment, by the supreme court or any judge thereof, the district court or any judge thereof, or, in the absence from the county of said judges, by the probate judge thereof, upon it appearing satisfactorily to the court or judge, by the affidavit of the plaintiff or his agent, that the plaintiff is entitled thereto."

The only other sections of said chapter which have any bearing on the subject under consideration are sections 255, 256, 257, and 260, as follows:

"Sec. 255. No injunction, unless provided by special statute, shall operate, until the party obtaining the same shall give an undertaking, executed by one or more sufficient sureties, to be approved by the clerk of the court

granting such injunction, in an amount to be fixed by the court or judge allowing the same, to secure the party enjoined the damages he may sustain, if it be finally decided that the injunction ought not to have been granted.

"Sec. 256. The order of injunction shall be addressed to the party enjoined, shall state the injunction, and shall be issued by the clerk. Where the injunction is allowed at the commencement of the action, the clerk shall indorse upon the summons, 'injunction allowed,' and it shall not be necessary to issue the order of injunction; nor shall it be necessary to issue the same, where notice of the application therefor has been given to the party enjoined. The service of the summons so indorsed, or the notice of the application for an injunction, shall be notice of its allowance.

"Sec. 257. Where the injunction is allowed during the litigation, and without notice of the application therefor, the order of injunction shall be issued, and the sheriff forthwith serve the same upon each party enjoined, in the manner prescribed for serving a summons, and make return thereof, without delay.

" Sec. 260. An injunction granted by a judge may be enforced as the act of the court. Disobedience of an injunction may be punished as a contempt by the court, or by any judge who might have granted it in vacation. An attachment may be issued by the court or judge, upon being satisfied by affidavit of the breach of the injunction, against the party guilty of the same; and he may be required, in the discretion of the court or judge, to pay a fine not exceeding two hundred dollars, for the use of the county, to make immediate restitution to the party injured, and give further security to obey the injunction ; or, in default thereof, he may be committed to close custody, until he shall fully comply with such requirement, or be otherwise legally discharged."

The general rule is that the authority to punish for con-

tempt belongs exclusively to the court in which the con-
tempt is committed. (Hawes, Jurisdiction, sec. 221; Wells,
Jurisdiction, p. 180.) In Rapalje on Contempts, sec. 13,
it is said: "It is a well settled rule that the court alone in
which the contempt is committed, or whose order or
authority is defied, has power to punish or entertain pro-
ceedings to that end." In *Kirk v. Milwaukee D. C. Mfg.
Co.,* 26 Fed. Rep., 501, it was held that when a cause is
removed from the state court to the circuit court of the
United States pending proceedings against one of the
parties for contempt in disobeying an order of the former,
the circuit court has no jurisdiction in such proceeding on
the ground that the contempt was against the state court
only. (See also *Passmore Williamson's case,* 26 Pa. St., 9,
and *State v. McKinnon,* 8 Oregon, 487.) Mr. Bishop
says (2 Bish., Crim. Law, 268): "It may be observed
that the very nature of a contempt compels the court against
which it was committed, to proceed against it, and if the
court has jurisdiction precludes any other or superior
tribunal from taking cognizance of it whether directly on
appeal or otherwise." The injunction was the process of
the district court. It was not effective for any purpose until
a bond was given and approved by the clerk of the district
court (sec. 255), nor until the order was issued under the
seal of the clerk or the summons indorsed, injunction
allowed (sec. 256). When issued and served it was under
the exclusive control of the district court. Whatever act
Bouton may have done in violation of the injunction was an
offense against the district court and not the county judge.
If such act amounted to a contempt it was a contempt of
the former and not the latter. The order which a county
judge is authorized to make is in an action in the district
court—an order formerly within the exclusive jurisdiction
of a court of chancery. When that order is made his
jurisdiction ends, unless his further authority clearly ap-
pears from the statutes. Jurisdiction of a county judge

to commit for the violation of the orders of a court of equity is an anomaly which should not be sustained upon any doubtful or uncertain grounds. It has been held by this court that proceedings in contempt are in their nature criminal and that the strict rules of construction applicable to criminal proceedings are to govern therein. (*Boyd v. State,* 19 Neb., 128.) With this rule in mind let us examine some other provisions of our statutes on the subject. The general provision on the subject of contempts is found in section 669 of the Civil Code, as follows :

" Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of any of the following acts : *First.* Disorderly, contemptuous or insolent behavior towards the court, or any of its officers, in its presence. *Second.* Any breach of the peace, noise or other disturbance tending to interrupt its proceedings. *Third.* Willful disobedience of, or resistance willfully offered to, any lawful process or order of said court. *Fourth.* Any willful attempt to obstruct the proceedings or hinder the due administration of justice in any suit, proceedings, or process pending before the courts. *Fifth.* The contumacious and unlawful refusal of any person to be sworn or affirmed as a witness, and when sworn or affirmed, the refusal to answer any legal and proper interrogatory."

By the next section it is provided that contempts committed in the presence of the court may be punished summarily, but in other cases the party, upon being brought before the court, shall have a reasonable time in which to make his defense. It will be observed that the power to punish for contempt is by the section quoted conferred, not upon its judges, but upon courts of record. The county court is a court of record in a restricted sense only, viz., while acting within the jurisdiction which it possesses concurrently with the district court. (*Schell v. Husenstine,* 15 Neb., 11.)

By the constitution, section 16, article 6, it is provided that the county court shall not have jurisdiction in actions in which the title to real estate is sought to be recovered or may be drawn in question. There is no doubt of the power of the county court to enforce its own orders made within its jurisdiction by proceedings in contempt. But the power of a county judge to punish as for contempt the violation of the order or decree of a court of chancery, as in this instance, where the title to real estate was directly involved, cannot be said to be within the spirit of the constitution. To hold that the county court, or the judge thereof, can under our system be authorized to enforce the orders or decrees of a court of equity in such a case by committing the offending party for the violation, thereof, appears to the writer to be a direct contravention of the constitution, and would have been strikingly incongruous, to say the least, had such been the clearly expressed intention of the legislature. The provisions of our statute for the allowing of injunctions and punishments for the breach thereof were copied from sections 239 and 247 of the Code of Ohio of 1853. The constitution of 1851, which was then in force in that state, contained no such limitation upon the powers of the probate (county) court as does ours. On the contrary, it was expressly provided by section 8, article 4, after defining the jurisdiction of the probate court as generally exercised by such courts, that it shall have "such other jurisdiction in any county or counties as may be provided by law"; and although substantially the same provision is found in the present Code of Ohio with respect to the allowance and enforcement of injunctions as in ours, there is in the reports of that state no case in which the probate court or judge has committed an offender for the violation of an injunctional order in an action pending in the court of common pleas. So far, therefore, as the practice under the constitution of that state sheds any light upon the question under consideration, it

tends to confirm us in the view already expressed. For had the practice been for the probate judges to commit for violations of orders such as in this case, it is at least probable that there could have been found some mention thereof in the reports of that state.

That constitutional and statutory provisions upon the same subject should be construed together, and that all statutes should be construed with reference to the common law, are elementary rules of construction which have been repeatedly recognized by this court. By an application of those rules to the question before us it is plain that the literal wording of section 260 must yield to the evident meaning of the several provisions on this subject when construed in the light of the common law. The power, therefore, to punish for the violation of an injunction "by the court or any judge who may have granted it in vacation" is limited to the court or judge *thereof* who may have allowed the order in question.

Exceptions were taken to a number of instructions which need not be noticed, since they all state in different language the one proposition already considered, viz., that the county court had jurisdiction in the proceeding against the defendant in error for contempt.

Among the instructions refused are several containing the same proposition as the following: " In an action of false imprisonment it is incumbent upon the plaintiff to prove by a preponderance of evidence that the original prosecution was without probable cause and was malicious." These instructions were properly refused. False imprisonment is the unlawful detention of the injured party. (Am. & Eng. Encyc. of Law, vol. 7, 662.) The question of malice is immaterial except so far as it affects the measure of damage. (*Comer v. Knowles*, 17 Kan., 436.) *Casebeer v. Rice*, 18 Neb., 203, relied upon by plaintiff in error, was an action for malicious prosecution and, therefore, not applicable.

Other instructions were refused which were intended by plaintiffs in error as a definition of a conspiracy. There was no error in refusing them. It was not neccessary to prove a conspiracy. (*Painter v. Ives*, 4 Neb., 122; *Fenelon v. Butts*, 53 Wis., 344.) The rule is that: any one who aids or assists in the unlawful imprisonment of another is chargeable as a principal. (7 Am. & Eng. Encyc. of Law, 679, and authorities cited in note.)

Lastly, it is insisted that the damages are excessive. The evidence discloses the fact that defendant expended $40 for the services of counsel in order to secure his discharge. He was detained in custody at least eight days, and was during said time imprisoned in the jail of the county twelve or thirteen hours. The verdict, $100, does not appear to be so disproportionate to the wrong as to call for action by this court.

AFFIRMED.

NORVAL, J., concurs.

MAXWELL, CH. J., dissenting.

I am unable to agree to the majority opinion for the following reasons: The proof clearly shows that the action was pending in the district court and that the district judge was absent from the county, and that the order of the county judge granting an injunction was valid. The sole question presented is, Has the county judge authority to punish for the willful violation of an injunction granted by himself?

Section 252 of the Code provides: "The injunction may be granted at the time of commencing the action, or at any time afterward, before judgment, by the supreme court or any judge thereof, the district court or any judge thereof, or, in the absence of said judges, by the probate judge thereof, upon it appearing satisfactorily to the court or judge, by the affidavit of the plaintiff or his agent, that the plaintiff is entitled thereto." This is a copy of the first

part of section 239 of the original Ohio Code, with the exception of the words "district court," which in the Ohio Code are "the court of common pleas." (Seney's Code, p. 239.)

Section 253 of the Nebraska Code provides: "If the court or judge deem it proper that the defendant, or any party to the suit should be heard before granting the injunction, it may direct a reasonable notice to be given to such party to attend for such purpose at a specified time and place, and may in the meantime restrain such party." This is section 240 of the original Ohio Code.

Section 260 of the Nebraska Code is as follows: "An injunction granted by a judge may be enforced as the act of the court. Disobedience of an injunction may be punished as a contempt by the court, or *by any judge who may have granted it in vacation.* An attachment may be issued by the court or judge, upon being satisfied by affidavit of the breach of the injunction, against the party guilty of the same; and he may be required, in the discretion of the court or judge, to pay a fine not exceeding $200, for the use of the county, to make immediate restitution to the party injured, and give further security to obey the injunction; or in default thereof, he may be committed to close custody until he shall fully comply with such requirement, or be otherwise legally discharged." This is a copy of section 247 of the original Ohio Code.

In looking through the reports of that state we have been unable to find a single case in which it was held that a judge who granted an injunction could not punish for a violation of the same. There is but little doubt violations of injunctions issued by county judges have taken place in that state and been punished by such judges, but if so, the plain language of the statute was held to be a sufficient warrant for such arrest and punishment, hence the cases were not taken to the supreme court. Under our statute the district court has jurisdiction to punish for a violation

of an injunction in a case pending in the court. If the statute stopped here, it would not be seriously contended that a judge could punish such violation. The language of the statute, however, is plain and unequivocal: "Disobedience of an injunction may be punished as a contempt by the court, or by any judge who may have granted it in vacation." If any judge who may have granted it in vacation may punish for a violation of the same, certainly a judge who was duly authorized and did grant it in vacation has authority to punish for a violation thereof. The punishment for a contempt is not based alone upon the disrespect shown the judge who granted the writ, but principally because the disobedience of the order interrupts the due administration of justice. This being so, it is necessary that the power to protect the order of injunction while it continues in force should remain in each county to be exercised as occasion may require. Suppose an individual or some of the great corporations should desire certain property for right of way or other use, in the county where the cause originated, or any other county in which no judge of the district court resides, and the property owner should obtain an injunction from the county judge against the appropriation of his property. In such case, as the county judge had no power to arrest and punish for a violation of the injunction, the owner of the property is practically without a remedy to prevent a violation of his rights. Suppose a railway was about to be built on a public street in front of the plaintiff's residence, or through his residence, causing a removal thereof, without complying with the law giving the company that right, and an order of injunction was obtained from the county judge, which it disregarded and went on and completed the work, the property owner would be practically without remedy. It is true he could recover damages after an expensive and exhausting litigation with a powerful opponent, but that is not an *adequate* remedy, and places the owner of the prop-

erty taken to quite an extent at the mercy of his antago-
nist.    There are many other wrongs liable to occur in any
county where the means of preventing the same are taken
away.    The statute provides an adequate remedy to pre-
vent the wrong, which is available to every person, be he
rich or poor.    In a late case the court held that the county
court had equity jurisdiction in cases arising out of probate
matters, and the same rule, no doubt, applies in cases of
injunctions.    An examination of the constitution of Ohio
and that of Nebraska will show no substantial difference
as to the power conferred in this respect on the county
judges.

Giving the words of the statute their plain natural mean-
ing, a county judge has authority to punish the violation of
an order of injunction, lawfully granted by him, and this,
so far as the writer is advised, has been the construction
placed on these words by the courts and bar of the state for
a third of a century.    Cases analogous to this frequently
arise in those states where a temporary order of injunction
is granted by a circuit court commissioner.    Thus in *Nieu-
wankamp v. Ullman*, 47 Wis., 168, an order of injunction
had been granted by a circuit court commissioner against
an insolvent debtor to restrain him from disposing of his
property.    The order being violated, the court held that
the commissioner could punish for a violation of the order,
but that the court possessed the power also.    The matter
is discussed in *Haight v. Lucia*, 36 Wis., 355, in which it
was held that in certain cases where the statute authorized
it, a circuit court commissioner *could punish* for contempt.
The Wisconsin statute is as follows: " Every court com-
missioner may issue subpœnas for witnesses, and attach-
ments and other process to compel their attendance, admin-
ister oaths, take depositions and testimony in civil actions,
when authorized by law, or by rule or order of any court
having jurisdiction of such actions, and return and report
such depositions and testimony; take and certify the ac-

knowledgments of deeds and other instruments in writing, state accounts between parties referred to him by order of court, determine upon the amount and sufficiency of bail, allow writs of *habeas corpus* and *ne exeat*, and grant injunctional orders; and may exercise within his county the powers of a circuit judge at chambers, in any civil action pending in such county, except as otherwise provided by law; and may do such other things as he may be authorized by law to do, and perform such other duties as may be required of him by the circuit court, or as are necessary and proper for the full exercise of the powers hereby granted; subject to review in all cases by the circuit court, as provided by law and the rules and practice of the court." Also, after providing for the examination of a debtor under oath before a circuit court commissioner, and where there is danger that the debtor will leave the state, authorizing the debtor's arrest and imprisonment, it is further provided in case "he has property which he has unjustly refused to apply to such judgment, he may be ordered to enter into an undertaking, with one or more sureties, that he will from time to time attend before the judge or court commissioner as he shall direct, and that he will not, during the pendency of the proceedings, dispose of any portion of his property not exempt from execution. In default of entering into such undertaking, he may be committed to prison by warrant of the judge, or court commissioner as for a contempt."

In this case it is distinctly held that a circuit commissioner, although his powers are much less than those of a county judge, may punish for the violation of an injunctional order issued by him, although the circuit courts also possessed that power. It is very clear to my mind that the county judge had jurisdiction and that the judgment should be reversed.