LEONARD DOESCHER, APPELLEE, V. WILLIAM ROBINSON ET AL., APPELLANTS.

271 N. W. 784

FILED MARCH 9, 1937.  NO. 29822.

*Mapes, Johnson & Maynard,* for appellants.

*Sutton & Fromkin, contra.*

Heard before ROSE, GOOD, PAINE and CARTER, JJ., and RYAN and KROGER, District Judges.

ROSE, J.

This is an action to recover damages in the sum of $12,000 for false imprisonment. Upon a trial of the cause the jury rendered a verdict in favor of plaintiff for $1,000. From a judgment therefor defendants appealed.

Plaintiff was an unmarried man 24 years of age, resided

with his parents on a farm near Beemer and assisted in farming 200 acres of land.

Defendants, as the cause was submitted to the jury, were William Robinson, Frank Rubin, Edward Bishop, and Interstate Detective Agency, a corporation. The three men named as detectives were members of the detective agency and conductd it. Gottlieb Schlecht had a contract with the detective agency under which it agreed to investigate and assist in bringing to justice any person guilty of larceny from him. He died in May, 1933, and later there were rumors that personal property belonging to his estate had been stolen and defendants began to perform for the administrator their contract as detectives. One of them met plaintiff on a street in Beemer July 1, 1933, invited him into an automobile, drove around with him for an hour or two, accused him of stealing some of the missing property and afterward released him. While plaintiff was cultivating corn July 5, 1933, the three detectives, two with guns visible in holsters, without any warrant or other process, approached him in the cornfield, left his team standing where it stopped, took him into their car, drove to different farms, accused him of thefts in the presence of third persons, and one of the defendants, with directions from the others, took him to West Point, the county seat, in the evening, and turned him over to the sheriff who kept him in jail for 48 hours. On his way home he walked three miles. The automobile rides and the imprisonment in the county jail were proved by the evidence on both sides.

The substance of the defense was that plaintiff confessed to the thefts and that defendants acted without malice in the performance of duty, with reasonable and probable cause to believe plaintiff guilty.

False imprisonment was clearly proved, and every fact upon which defendants relied for a defense was refuted by sufficient competent evidence which the jury believed.

On appeal defendants contend that there were no damages and that the evidence does not sustain the verdict for $1,000. There is nothing in the record to show that plain-

tiff was not a normal, unmarried man 24 years of age. His reputation had not been sullied by any former arrest or imprisonment for a criminal offense. He had never before been troubled by detectives or police officers. No prosecuting officer, detective or private individual ever filed a complaint against him. There was no such complaint in the present instance. His right to his inheritance of life, liberty and the pursuit of happiness had not formerly been disturbed. It is fair to infer, therefore, that his conscience had not been hardened by crimes or contests in criminal courts and that he was subject to the natural reactions of an innocent person whose rights have been invaded by unlawful acts of detectives. The evidence justified the jury in finding that plaintiff was under arrest against his will while he was taken for rides among farmers in his community and accused of stealing property belonging to the estate of Gottlieb Schlecht—a deceased neighbor who had lived, roomed and boarded with plaintiff's parents for 21 years, up to the time he was taken to the hospital during his last illness. The evidence tends to prove also that plaintiff was under arrest and imprisoned in an automobile after he was taken from his work in the cornfield by the armed defendants; that he was under arrest on his way to West Point; that he was prevented from communicating with his parents and with an attorney while in jail. Defendants themselves proved that they tried hard to have plaintiff charged with grand larceny, a threat to make him answer for a penitentiary offense. They told their stories to the county attorney and to the sheriff and plaintiff was released from custody after 48 hours in jail.

Defendants assert that plaintiff did not suffer any pecuniary damage. The law, however, does not put the harrowing experiences, to which they subjected him, on the same footing as the freedom, repose and comfort he enjoyed in the cornfield and in the home of his parents and in the society of friends. There is evidence that his reputation in his community was impaired; that he was shunned; that he was not invited to parties and other social gather-

ings as formerly; that he remained at home; that he was depressed; that it was a year before he was restored to former conditions; that he lost much every normal, innocent young man holds dear. While there was no direct testimony of "mental anguish," in that identical term, inference of humiliation, disgrace and mental suffering arose from circumstances and natural reactions from the wrongful acts of defendants. There is testimony, however, that plaintiff "acted kind of scared" after he returned home. Fear inspired by unlawful acts may be an element of damage.

Credibility of witnesses and weight of evidence were questions for the jury. The instructions protected defendants in every right which the law gave them. The law is: "False imprisonment is the unlawful restraint of a person without his consent either with or without process of law." *Johnson v. Bouton,* 35 Neb. 898, 53 N. W. 995. The law does not prescribe a definite rule for the ascertainment of the exact amount recoverable for false imprisonment. The rule often stated is that the amount recoverable is such a sum as will fairly and reasonably compensate plaintiff for the pecuniary damage which the jury under proper instructions may find, from the evidence, was caused by the wrongful acts of defendants. What is fair and reasonable damage is in the sound discretion of the jury. Within the meaning of these rules of law in connection with all the evidence considered from every standpoint, there is no substantial ground for setting aside the verdict as unsupported by the evidence or as excessive.

The judgment is also attacked on the ground that the trial court erred in excluding a deposition deemed by defendants essential to their defense. The rejected deposition was offered in evidence in violation of the following provision of statute:

"Every deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial." Comp. St. 1929, sec. 20-1261.

The trial court found there was no excuse for the delay

and the record fails to disclose error in the exclusion of the deposition.

Defendants also challenge as erroneous the overruling of a motion for a continuance. This motion was presented near the close of a long trial after plaintiff had made his case and after defendants had adduced all their evidence except the rejected deposition. Since the deposition was properly excluded, the refusal to grant a continuance was in the discretion of the trial court. Neither an abuse of discretion nor an error in the ruling is shown by the record. Prejudicial error has not been found. in the proceedings. and judgment below.

AFFIRMED.