Alfred B. WATERS, Appellant
(Defendant below),

v.

Charles BRAND, Appellee (Plaintiff below).

No. 4042.

Supreme Court of Wyoming.

June 8, 1972.

Jones, Jones, Vines & Hunkins, and W. H. Vines, Wheatland, for appellant.

Smith, Stanfield & Mendicino and Thomas S. Smith, Laramie, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

On September 4, 1969, Charles Brand filed a complaint against Alfred B. Waters, alleging, inter alia, that the actions of defendant at approximately 1:15 a. m., August 10, 1969, had put him in great apprehension of being shot; that defendant had thereafter represented himself as an officer of the law and had placed plaintiff under arrest, which arrest was unauthorized; held him under force of threat; and taken him to the Platte County Sheriff. Plaintiff asked for liquidated damages in the amount of $91.00; damages because of mental and physical distress, harm to his good name, reputation, and credit, and public humiliation, embarrassment and shame, in the sum of $10,000.00; and for $20,000.-00 exemplary damages. Defendant denied generally and following trial to the court without a jury, judgment was entered in plaintiff's favor for $500.00 damages plus $500.00 exemplary damages, from which defendant has appealed.

■ There is some conflict in the evidence and defendant indicates his recognition of our obligation to assume that the evidence in favor of the successful party is true, leaving out of consideration entirely evidence of the unsuccessful party in conflict therewith, and giving to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. Severin v. Hayes, Wyo., 372 P.2d 1017, 1020.

The facts most favorable to plaintiff show briefly: Alfred and Avice Waters received a decree of divorce August 22, 1969, complaint having been filed July 14, 1969, and a restraining order simultaneously issuing against Mr. Waters. Charles Brand was Mrs. Waters' step-cousin and had an apartment in Wheatland. There had been no one to enforce the restraining order, and about August 3 Mr. Brand came to stay with Mrs. Waters at Glendo (Platte County) so that "nobody would come around." During the afternoon of August 9, they decided to go to a cabin[1] in the Laramie Peak area (Albany County) to fish and relax. This cabin was then being purchased by Mr. and Mrs. Waters and according to the testimony Mr. Waters was not to go there at any time his wife occupied it. Mr. Brand and Mrs. Waters were accompanied to the cabin by her three children and Mr. Brand's stepchild. Later that day nine adults (including Mr. Waters' nephew) and several small children also arrived at the cabin site, all of these leaving by evening except the nephew and two of his friends. On Saturday evening, August 10, the children went to a dance being held nearby but Mrs. Waters and Mr. Brand did not accompany them because of the other guests, who left sometime before 10:30 p. m. After Mrs. Waters had done some cleaning the two remaining played cards until one or one-thirty. Mr. Brand then went to one of the sleeping cabins to retire since he had had little sleep the previous evening, as he had sat up visiting until after 4 a. m. Mrs. Waters, who had gone to the outhouse, went into his cabin to see if he wanted another blanket. He was sitting on the bed with his boots off, and she sat down on the end of the bed, asking if he needed additional bedding. He commented that it was kind of chilly and she reached over and kicked the cabin door shut. A few minutes later the door burst open, and Mr. Waters entered the cabin, pointing a pistol at and saying to Mr. Brand and his wife that they were under arrest, that he had "caught you ——'s in bed," Mrs. Waters (who was

1. The complex consisted of a main cabin, three separate sleeping cabins, and an outdoor toilet.

fully clothed, including her coat) replying, "No you didn't."

Mr. Waters had told the sheriff on August 9 that he figured his wife was at the cabin and had at that time been deputized as a sheriff for Platte County because of vandalism, explaining to the sheriff that if he caught someone he could show the card and hold them until the sheriff arrived. He was told that the card issued to him could not be used at his Laramie Peak place since it was in Albany County. He and his son-in-law had arrived at the Laramie Peak cabin about 1:15 a. m.

After Mr. Waters had made the arrest he, his wife, and Mr. Brand went to the main cabin, and while his son-in-law was getting the truck they had come in, an altercation occurred, Mr. Brand overpowering Mr. Waters, but releasing him when requested to do so by his wife. Mr. Waters drove himself and the other three to Glendo where he picked up a deputy sheriff and then proceeded to the Office of the Platte County Sheriff in Wheatland where Mr. Brand was held, Mr. Waters having arrested him for adultery, assault and battery, and attempted murder. On Monday, August 12, Mr. Brand was taken to the Office of the Albany County Sheriff, contacted a Laramie attorney, and was released by the Albany County authorities shortly after noon on August 12.

The trial court found that Mrs. Waters and the plaintiff did not commit the crime of adultery on August 10 nor at any time prior thereto, that plaintiff committed neither the crime of assault and battery nor attempted murder; that Mr. Waters did arrest plaintiff by the use of force and threats; that such arrest was unlawful; and that it was malicious, willful, wanton, and reckless on the part of the defendant.

In his appeal, defendant claims (1) he owed to Brand no duty which was violated,

that is, there was no tortious act committed upon Brand; (2) Brand placed himself in a position which caused his plight and therefore assumed the risk in connection with the incident, (3) Brand did not show that he had been damaged or the amount of any damage and therefore wholly failed to prove damages.

 As to defendant's first point, in view of the finding of unlawful arrest, amply supported by the record, we see no merit in the claim there was no tortious act committed on plaintiff. Concerning his second point, assumption of risk is an affirmative defense,[2] which was not pleaded by defendant; hence he cannot raise such question on appeal, Badley v. Birchby, Wyo., 487 P.2d 798, 799. Adverting to the matter of damages, defendant insists under the authority of Quinlan v. Jones, 27 Wyo. 410, 198 P. 352, that when one claims damages from another beyond nominal he must prove them; under Reeder ·Flying Service v. Crompton, Wyo., 470 P.2d 281, that the damages if proved must be susceptible of ascertainment with a reasonable degree of certainty; and under Condict v. Hewitt, Wyo., 369 P.2d 278, if a plaintiff is not entitled to actual damages he is not entitled to punitive damages, and puts particular stress on the fact that plaintiff was a convicted felon.[3]

 The mere unlawful detention of a person constitutes a basis of recovery of at least nominal damages. Hoagland v. Forest Park Highlands Amusement Co., 170 Mo. 335, 70 S.W. 878, 881; 32 Am. Jur.2d False Imprisonment § 113. The law does not prescribe a definite rule for the ascertainment of the exact amount of recovery for false imprisonment. Doescher v. Robinson, 132 Neb. 299, 271 N.W. 784, 786; see 4 A.L.I. Restatement, Torts, § 905, p. 548 (1939). A plaintiff may recover such a sum as will fairly and reason-

2. Rule 8(c), W.R.C.P.

3. In 1945 at seventeen plaintiff had violated the Dyer Act and when given a choice of going to a home or into the service was released and entered the service. Between 1947 and 1964 there had been other difficulties, and in 1964 he was given six months to ten years, serving ten months, on a grand theft auto and forgery charge (he had issued a check without sufficient funds in the purchase of an automobile).

ably compensate him for the shame, humiliation, disgrace, and mental anguish the evidence shows that he suffered by virtue of the false imprisonment. Herbrick v. Samardick & Company, 169 Neb. 833, 101 N.W.2d 488, 494. This court as early as 1871 made it very clear that exemplary damages might be awarded where there was evidence of an intention to do the personal injury complained of. Union Pacific Railroad Company v. Hause, 1 Wyo. 27, 35; and recently in Condict v. Hewitt, supra, 369 P.2d at 280, pointed out what lies behind the doctrine of exemplary damages, i. e., punishment of the wrongdoer and protection of society and the social order. Also, it must be borne in mind that a convicted felon once again in the mainstream of American life is entitled to protection as much as one never found to have transgressed the law. Of course, intensity of distress was a factor to be considered in assessing damages,[4] and undoubtedly the trial court recognized this when it arrived at the modest figure of $500.00.

There is substantial evidence in the record which would support the judgment against defendant as to the damage suffered by the plaintiff, and accordingly, the judgment is affirmed.

Affirmed.

4. 4 A.L.I. Restatement, Torts, § 905, pp. 547–548 (1939).