IDA KURPGEWEIT, APPELLEE, v. EDWARD KIRBY, APPELLANT.

FILED DECEMBER 10, 1910. No. 16,136.

1. Trespass to Person: ELEMENTS OF DAMAGES. The facts set forth in the opinion *held* to show a wanton and wilful trespass upon the person of the plaintiff, accompanied by such circumstances of aggravation as justifies the inclusion of mental suffering, humiliation and disgrace as proper elements of compensatory damages.

2. ——: MATTER IN AGGRAVATION. Matter in aggravation is something done by the defendant upon the occasion of the commission of the principal trespass, which is of a different legal character from, but not inconsistent with, the trespass.

3. ——: MEASURE OF DAMAGES: QUESTION FOR JURY. Where there is a direct invasion of personal rights under circumstances showing malice, or a wilful and wanton disregard of another's right to personal security, the amount of compensatory damages is not susceptible of exact computation, and must usually be left to the sound discretion of the jury.

4. Appeal: EXCESSIVE DAMAGES. Where, in such a case, considering all the circumstances, the verdict is for such amount as clearly shows it is the result of passion or prejudice, it cannot be upheld, and a remittitur will be required, or the case reversed and remanded for a new trial.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed on condition.*

M. F. *Harrington,* E. D. *Kilbourn* and H. H. *Kilburn,* for appellant.

W. E. *Reed, contra.*

LETTON, J.

The plaintiff is a young married woman living upon a farm with her husband. The defendant is a widower, a farmer residing in the same neighborhood. On the night of August 9, 1906, somewhere between the hours of 9 and 11 o'clock, and after the plaintiff's family had retired, the

defendant came to her home and stated that Mrs. Stubbert, a neighbor who lived with her husband about $2\frac{1}{2}$ miles
away, was about to be confined and was very sick; that two
other women of plaintiff's acquaintance were at her home,
and that they had requested that the plaintiff come over
at once to assist. After some conversation the plaintiff
took her three months' old infant and started for Stubbert's with the defendant in his buggy. When they arrived close to the Stubbert home, which stood back from
the road and was reached by a lane, the defendant drove
beyond the lane in the direction of his own home, and,
upon plaintiff stating that was the Stubbert place, he
turned back and was about to drive beyond the lane again,
when the plaintiff jumped from the buggy with her infant
and went to the house. She knocked at the door, and when
it was opened asked Mrs. Stubbert if the other women
whom defendant represented had sent for her were there,
and was told they were not. She then asked if Mrs. Stubbert was sick, and was informed that there was nothing
the matter with her. Upon thus finding out the deception
which had been practiced upon her, she went into the
house and became very much agitated and alarmed, crying
and lamenting her condition, and foreseeing neighborhood
gossip. The defendant in the meantime had stopped his
team near the house, and after some conversation with
Mr. Stubbert had come into the room. Some conversation
then was had as to her going home. Mrs. Stubbert suggested that her son Frank, a young man, take her home,
but plaintiff testifies she was afraid to go with him on
account of the defendant saying he would meet them at
the corner. Mrs. Stubbert then sent Frank for the plaintiff's husband, who came and took her home. It was proved
that, in the conversation with Mr. Stubbert, defendant
used language implying that plaintiff was a lewd and immoral woman. It was also shown that, after this event,
gossip was rife in the neighborhood with respect to the
plaintiff's character, and that some of these rumors and
stories had been communicated to her, but the court in-

structed the jury to disregard all the evidence with regard to such matters, except as to what was said to plaintiff herself by others. These are, in substance, the facts testified to by the plaintiff.

The defendant admitted that the story by which he procured the plaintiff to leave home and ride with him that night was false, and the only explanation he offers for his despicable conduct is that he had been drinking that day, and that it was his intention in this way to play a joke on the Stubberts, who had been married late in life. He denies any improper advances or that he laid hands on the plaintiff, except that he put the corner of her apron over the baby's face to protect it from the cold.

The petition pleads the fraud and deception whereby plaintiff was decoyed from her home, an assault when she left the buggy, the derogatory statements as to her character made by defendant to Stubbert, loss of reputation and mental anguish, humiliation, mortification and disgrace by reason of the position she was placed in, and consequent gossip in the community. The answer is a general denial.

The plaintiff apparently is not very ready in her use of English. Her testimony is meager and much of it was drawn out by the use of leading questions. There is absolutely no evidence of any physical injury either direct or indirect to her person. The evidence clearly shows that she wept and was greatly agitated after she had been informed of the deception practiced upon her, and it is further shown that, in consequence of being told by neighbors that her reputation was suffering on account of the night ride with the defendant, she became somewhat nervous and suffered to some extent from sleeplessness.

In this state of the evidence the court gave the following instructions among others:

"No. 7. If you find for the plaintiff you will assess her damages at only such sum as you believe and find, from a full and fair consideration of all the facts and circumstances in evidence before you, will compensate her for

the physical and nervous pain, mental distress and agony, if any you find, resulting from such deceit and unlawful acts of the defendant. which you find were committed by him, and, in determining the amount of such damages, you will also consider mental pain and suffering, resulting from communications, which you find were made to her, that she was a subject of public notoriety and scandal in the community where she lived, naturally resulting from such wrongful act of defendant, such damages, however, in no case to exceed the sum of $25,000.

"No. 8. You are instructed that this is not an action for slander or libel, but an action for damages by reason of the alleged assault and assault and battery, and deceit practiced upon plaintiff by defendant to induce her to accompany him from her home, and if you find for the plaintiff, in determining the amount of her damages, you will in no manner consider or allow any sum as damages by reason of any alleged injury to her character and reputation by any statements concerning the same made by defendant or other persons.

"No. 2, tendered by plaintiff. Notwithstanding you may find from the evidence that the plaintiff bore no outward sign of physical suffering and pain, yet if you find from the evidence that plaintiff has by reason of defendant's acts and conduct toward and concerning plaintiff upon the night of July 27, 1906, suffered mental pain and anguish, your verdict should be for the plaintiff, and you should assess full damages therefor, not exceeding the amount claimed in her petition."

Defendant's counsel insist that there was error in the giving of these instructions; that where the evidence shows mental anguish unaccompanied by any physical injury, there can be no recovery; citing *Atkins v. Gladwish*, 25 Neb. 390, and a number of other cases mostly involving negligence or breach of contract. There is a decided conflict in the authorities as to whether in such cases there can be a recovery for mental suffering if unaccompanied by physical injury. In states allowing punitive or ex-

emplary damages such suffering may usually be considered by the jury as an element of damages, but in states where only compensatory damages are allowed the prevailing rule, with some exceptions, seems to be that there must be some physical injury, either directly or proximately caused by the wrongful act or omission, before mental pain and anguish may be taken into account, although in telegraph cases this distinction does not seem to exist. The reason given for the rule usually is that in the absence of any visible evidence of injury to the person the opportunities for putting forth unfounded claims for damages would be so numerous and the facilities afforded for depriving persons of their property by false charges would be so great that the courts will not open the door to the train of evils that might in all probability be expected to enter if such a rule were adopted. We do not think it necessary to consider or distinguish the cases bearing upon this subject here. A number of them may be found collected and reviewed in note to *West v. Western Union Telegraph Co.*, 7 Am. St. Rep. 530 (39 Kan. 93), in note to *Green v. Western Union Telegraph Co.*, 1 Am. & Eng. Ann. Cases, 349 (136 N. Car. 489), and in note to *Gulf, C. & S. F. R. Co. v. Hayter*, 77 Am. St. Rep. 856 (93 Tex. 239), which latter note, though dealing mainly with the subject of fright, includes many cases upon the general subject.

We consider the peculiar circumstances of this case to place it within the reason of another class of cases, where by an active and wilful or wanton act one has been injured in his personal rights and privileges, has been deprived of his liberty, or damaged in reputation, or outraged and humiliated in his personal self-respect or in the finer sentiments of his nature. Recovery for mental anguish, humiliation, and loss of reputation may be compensated without proof of actual pecuniary loss in actions for libel and slander where the matter is libelous *per se* (*Laing v. Nelson*, 40 Neb. 252; *Boldt v. Budwig*, 19 Neb. 739; *Brooks v. Dutcher*, 24 Neb. 300; *Williams v. Fuller*, 68 Neb. 354); in actions for malicious prosecution, which is

held to be an attack on one's reputation (*Miles v. Walker,* 66 Neb. 728; *Minneapolis Threshing Machine Co. v. Regier,* 51 Neb. 402) ; in actions for criminal conversation (*Smith v. Meyers,* 52 Neb. 70) ; for breach of promise (*Musselman v. Barker,* 26 Neb. 737) ; for digging up the dead body of plaintiff's son (*Meagher v. Driscoll,* 99 Mass. 281) ; for wrongful ejection from cars, and for a conductor kissing a female passenger against her will (*Smith v. Pittsburg, Ft. W. & C. R. Co.,* 23 Ohio St. 10; *Lake Erie & W. R. Co. v. Fix,* 88 Ind. 381; *Quigley v. Central P. R. Co.,* 11 Nev. 350; *Chicago & A. R. Co. v. Flagg,* 43 Ill. 365, 92 Am. Dec. 133; *Craker v. Chicago & N. W. R. Co.,* 36 Wis. 657, 17 Am. Rep. 504) ; for being deprived of the remains by an undertaker to whose care the dead body of a daughter had been committed (*Renihan v. Wright,* 125 Ind. 536, 9 L. R. A. 514) ; in an action for the abduction of a child (*Magee v. Holland,* 3 Dutch. (N. J.) 86, 72 Am. Dec. 341).

The question whether such damages are of the nature of exemplary or compensatory is sometimes a very close one; but, even in states which allow compensation only, damages are allowed which are not susceptible of precise computation and the amount of which must be left largely to the discretion of the jury, as witness the Nebraska cases above referred to.  Note to *Spellman v. Richmond & D. R. Co.,* 28 Am. St. Rep. 858, 870 (35 S. Car. 475) ; 1 Sutherland, Damages (3d ed.) secs. 95, 96.  The subject is discussed at length in *Smith v. Pittsburg, Ft. W. & C. R. Co., supra,* and in *Quigley v. Central P. R. Co., supra.*  The latter is a Nevada case, in which state it is held (*Johnson v. Wells, Fargo & Co.,* 6 Nev. 224) that ordinarily mental anguish without physical injury is not a proper element of damages.  If one is taken openly from his home by arrest under color of process he may be permitted to recover damages for loss of reputation and mental suffering.  What reason can there be for refusing a like compensation to one who is decoyed from her home by fraud and deceit, under circumstances which cast a cloud upon her reputation and caused unfavorable comment upon her character?  More-

over, the acts of the defendant resulted in damage of precisely the same character as that which would have been caused by an oral or written attack on her reputation. Why should it not be compensated for in a like manner and to the same extent?

Conceding, for the purpose of argument, the soundness of the contention by defendant's counsel that mental anguish without physical injury is not a proper element of damages in an action purely for assault, in this case the wrong was caused, and recovery is sought, not by and for the assault alone, but by the conjoined acts of deceit by which the plaintiff was induced to leave her home, the trespass upon her person by taking hold of her arm before reaching the Stubbert's home, the statements derogatory to her reputation made at the time by the defendant to Stubbert, and the mental suffering caused by the knowledge brought to the plaintiff as to the neighborhood gossip. We are of opinion that the argument does not fit the circumstances of this case; that *Atkins v. Gladwish, supra,* is distinguishable; and that the jury properly took into account all the circumstances accompanying the transaction. As the case was submitted to the jury it was really an action for a trespass upon the person of plaintiff, a direct invasion of her personal rights, and the accompanying circumstances of mental suffering, humiliation, and injury to her social standing and reputation in the neighborhood constituted matter in aggravation. Matter in aggravation is something done by the defendant upon the occasion of the commission of the principal trespass, which is of a different legal character from, but not inconsistent with, the trespass. Thus, upon a trespass for breaking and entering a house under a false charge that the plaintiff was concealing stolen property, whereby her quiet enjoyment was interrupted and her character was injured, it was held that the trespass was the substantial allegation, and the rest matter of aggravation only. *Bracegirdle v. Orford,* 2 M. & S. (Eng.) 77. In trespass *quare clausum fregit* the gist of the action was the unlawful entry, but it was alleged

in aggravation that the plaintiff's daughter was assaulted and ravished by the defendant. The assault was held to be merely matter of aggravation, and it was unnecessary to allege or prove a contract or loss of service. *Bennett v. Alcott*, 2 T. R. (Eng.) 166; *Donohue v. Dyer*, 23 Ind. 521. See, also, *East v. Cain*, 49 Mich. 473; *Anonymous*, Minor (Ala.) 52.

The case is unusual in its facts, and we have devoted more time and labor to the investigation of the legal principles governing its disposition than perhaps was necessary or appears in this opinion. We are satisfied the jury were entitled to consider the elements of damage submitted to them. In all cases of this class the damages are difficult of ascertainment, and must be left to the sound discretion of the jury. It is impossible to ascertain with any degree of precision what amount will compensate the plaintiff for the wrong suffered. Of course, if the verdict is for such an amount as to shock the conscience, or if it appears to be so disproportionate to the injury suffered that it appears to be the result of passion or prejudice, it cannot be upheld.

The verdict for $3,000, however, seems to be excessive, and, considering all the circumstances, we think it must have been the result of passion or prejudice on the part of the jury. The plaintiff, therefore, will be required to remit the sum of $1,500 as a condition of affirmance, otherwise the case will be reversed and remanded for a new trial.

JUDGMENT ACCORDINGLY.

ROSE, J., dissenting.

I dissent from the order requiring a remittitur as a condition of affirmance, for the reason that in my judgment the verdict is not excessive.