Franklin E. BOND, Appellee,

v.

LOCAL UNION 823, INTERNATION-
AL BROTHERHOOD OF TEAM-
STERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS OF
AMERICA, Appellant.

No. 74–1482.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 10, 1975.

Decided Aug. 4, 1975.

Daniel J. Leary, Joplin, Mo., for appellant.

John A. Biersmith, Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

This appeal presents for our review an award of actual and punitive damages in favor of an employee against his union for breach of its duty of fair representation. See *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Franklin E. Bond, plaintiff below, had been employed as an over-the-road driver by Red Arrow Transportation Company, which was party to a collective bargaining agreement with Teamsters Local 823, of which Bond was a member. In July 1968, Red Arrow ceased operations and filed a petition in bankruptcy. Bond thereafter went to work for Tri-State Motor Freight, Inc. During the course of Red Arrow's bankruptcy proceedings, Yellow Freight System, Inc., defendant below, purchased the operating rights of Red Arrow, subject to the approval of the Interstate Commerce Commission. Following the granting of such approval by the I.C.C., Yellow "tacked on" Red Arrow's permits to its own at their common points. Yellow also hired several new employees not previously associated with Red Arrow.

After the "tack on," Bond approached Kitts, the President and Business Representative of Local 823, concerning employment at Yellow. When the union persuaded Yellow to employ Bond and four other drivers from Red Arrow, Bond was hired at the bottom of Yellow's seniority list, below those new employees hired after the "tack on." Bond thereupon attempted to present a grievance through Local 823, claiming a right to greater seniority under the terms of the collective bargaining agreement between Yellow and Local 823. The union, however, in accordance with its established procedures, elected to pursue the issue on behalf of Fred Renier, another employee similarly situated, and did not submit Bond's grievance to the Grievance Committee. The Grievance Committee denied Renier's grievance following a hearing to which Bond had not been invited. When no further appeals of that decision were processed, Bond filed his own grievance in which he sought the fringe benefits to which he felt entitled by virtue of his claimed se-

niority. He was never given an opportunity to appear before the Grievance Committee; his claim was denied and he was told that the decision could not be appealed. Bond then initiated this action pursuant to § 301 of the National Labor-Management Relations Act, 29 U.S.C. § 185.

In the first count of his complaint, Bond sought compensatory damages against Yellow for breach of contract and against the union for failure to represent him fairly in connection with his grievance. In the second, he named Yellow and the union as members of a conspiracy and sought damages from both for the resulting deprivation of seniority benefits. The third count of the complaint asked for the recovery of punitive damages from both defendants.

Following a jury trial, the District Court[1] directed a verdict in favor of both defendants on the conspiracy count. The other counts were submitted to the jury, which awarded Bond $10,500 in actual and $22,500 in punitive damages against the union; the jury assessed the same amounts against Yellow. Following post-trial motions by both defendants, Judge Becker entered a judgment notwithstanding the verdict in favor of Yellow on the issue of punitive damages, but he let stand the other portions of the jury's award.[2]

The union has taken this appeal, challenging the trial court's instructions to the jury, the submission of the issue of fair representation to the jury, the award of punitive damages, and the trial

judge's restriction of Kitts' testimony. With the exception of the assessment of punitive damages against the union, for which we find inadequate factual support in the record, we affirm the judgment below.

## I. THE INSTRUCTION ON THE CONTRACT PROVISIONS

The collective bargaining agreement between Yellow and Local 823 contained, in addition to a general clause recognizing the seniority rights of employees,[3] specific seniority provisions designed to apply "[i]n the event that the Employer absorbs the business of another private, contract or common carrier, or is a party to a merger of lines":

(2) If, in the type of transaction described above, one of the Companies is insolvent at the time of the transaction, then the employees of the insolvent Company will go to the bottom of the Master Seniority List. The test of whether a Company is solvent or insolvent is governed entirely by whether bankruptcy, receivership, composition for the benefit of creditors, reorganization, or similar proceedings are pending in the state or federal court. If such proceedings are pending, the Company is considered insolvent for the purpose of this rule.

(3) If the transaction involved constitutes merely a purchase of permits or rights by one Carrier from

---

1. The Honorable William H. Becker, Chief Judge, United States District Court for the Western District of Missouri.

2. Neither Bond nor Yellow Freight has appealed from the judgment entered by the District Court.

3. Article 5, Section 1 of the Contract provided:

   Seniority rights for employees shall prevail under this Agreement and all Agreements supplemental hereto. Seniority shall only be broken by discharge, voluntary quit, more than a

three (3) year layoff, or for such greater period than three (3) years as a change of operation committee may direct during the third year as provided in Article 8(e) herein, or as provided in any applicable provisions of the Supplemental Agreements. The extent to which seniority shall be applied as well as the methods and procedures of such application shall be clearly set forth in each of the Supplemental Agreements.

\*  \*  \*  \*  \*  \*

another Carrier, without the purchase or acquisition of equipment, terminals, or business, the employees of the Company selling the permits shall have no seniority rights at all, but shall be offered opportunity for employment at the bottom of the seniority list of the Company purchasing the permits. If such employees are hired they shall be given seniority credit for fringe benefits only.

\* \* \* \* \* \*

Throughout this litigation, it has been the defendants' position that these contract provisions were inapplicable since Yellow had not absorbed Red Arrow's business but had, instead, simply purchased its operating licenses following the total cessation of Red Arrow's operations and the ensuing bankruptcy proceedings. The issue was as important to the union's case as it was to Yellow's because, but for the underlying breach of the collective bargaining agreement by Yellow, the question of unfair representation would not have arisen.

In this appeal, the union contends that the jury was erroneously charged on the application of the contract provisions. The challenged instruction explained that:

[the] agreements provided in material parts that if Yellow Freight System, Inc., a solvent carrier, absorbed the business of a bankrupt carrier, Yellow Freight System, Inc., was obligated to grant seniority to the former employees of Red Arrow Transportation Company, Inc., at the bottom of the existing Yellow Freight Master Seniority List. And this agreement is applicable even though only the operating rights of Red Arrow Transportation Company, Inc., were purchased by Yellow Freight.

Therefore, if you find that Yellow Freight System, Inc., in 1969, absorbed the business of Red Arrow Transportation Company, Inc., by purchase and exercise of the operating rights of Red Arrow Transportation Company, Inc., from the trustee in bankruptcy, and you further find that Yellow Freight System, Inc., failed to grant plaintiff seniority at the bottom of its pre-existing Master Seniority List, when it absorbed the business of Red Arrow Transportation Co., Inc., then you shall find the agreements aforesaid breached. And if you find such a breach and that the plaintiff suffered monetary loss as a direct result thereof, you may find that the plaintiff was damaged within the meaning of these instructions.

We find no error in the instruction, for the question of absorption, stressed by appellant, was properly left to the jury to decide as an issue of fact. Thus, the instruction was carefully worded to inform the jury that the special seniority provisions were to apply *only if* the jury first found that Yellow had absorbed Red Arrow's business. Contrary to appellant's contentions, the contract was not ambiguous and Judge Becker correctly interpreted it for the jury. *See Butler v. Teamsters Local 823*, 514 F.2d 442, 452 (8th Cir. 1975).

Appellant's alternative contention that Judge Becker gave Bond the benefit of both the "insolvency" rule (subsection (2) quoted *supra*) and the "purchase of permits" rule (subsection (3) quoted *supra*) likewise lacks merit. Both provisions unequivocally require that, following absorption, the employees of the affected company be placed at the bottom of Yellow's existing seniority list. The instruction fairly tracks the relevant provisions of the collective bargaining agreement and we discern no error here.

## II. DUTY OF FAIR REPRESENTATION

Appellant asserts that there was insufficient evidence as a matter of law to submit to the jury the alleged breach of its duty of fair representation

and that instruction to the jury on that duty did not accurately reflect the law. We disagree.

The duty of a union to represent fairly the employees for whom it is the exclusive bargaining agent is a duty imposed by federal law. *Vaca v. Sipes, supra,* 386 U.S. at 177, 87 S.Ct. at 909–10; *see* Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Calif.L.Rev. 663, 702 (1973). "Under [the fair representation] doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes, supra,* 386 U.S. at 177, 87 S.Ct. at 910. Thus, a breach of that duty "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra,* 386 U.S. at 190, 87 S.Ct. at 916; *see Butler v. Teamsters Local 823, supra,* 514 F.2d at 453–54; *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853, 859 (8th Cir. 1975); *Richardson v. Communications Workers of America,* 443 F.2d 974, 980–81 (8th Cir. 1971).

The District Court defined the union's legal duty as follows:

> The duty of the union fairly to represent the plaintiff in the processing of plaintiff's grievance requires the union to process a meritorious grievance in good faith, earnestly and not perfunctorily, without arbitrariness or unreasonable discrimination. While a reasonable range of discretion is allowed the union as an exclusive bargaining agent in serving the plaintiff in processing of his grievance.

> And in that connection I want to give you this further instruction:

> The Court instructs the jury that under the laws of the United States,

Local Union No. 823 was in 1969 the exclusive bargaining agent for the employees of Yellow Freight Systems, Inc., and as such bargaining agent Local Union No. 823 had a legal duty fairly to represent the plaintiff as an employee in the processing of his complaint and grievance mentioned in evidence.

This language represents an accurate statement of the duty defined in *Vaca v. Sipes, supra.* Contrary to appellant's contention, we think the instruction imparted to the jury in a clear and adequate fashion the duty of the union, within a "reasonable range of discretion" to act without arbitrariness and to do so in good faith.[4]

Measured against these standards, there was ample evidence adduced at trial to submit the fair representation question to the jury. The record is clear that Kitts had informed Bond and another former Red Arrow employee that it was the union, not Yellow, which was blocking their efforts to secure jobs following Red Arrow's bankruptcy proceedings. There was also evidence in the record that Bond had been "guaranteed" by the union that Yellow would not hire him. It is undisputed that Bond's own grievance was not pressed by the union; moreover, Bond was given neither notice nor an opportunity to be present at the hearing on Renier's grievance, the so-called "test case" for similarly situated union members. Finally, there was substantial evidence, despite Judge Becker's instructions to the jury to disregard such testimony, that Kitts had been opposed to the grievants' case from the start. The plaintiff made a submissible case on the alleged breach by the union of its statutory duty of fair representation. *See Butler v. Teamsters Local 823, supra,* 514 F.2d at 453–54.

## III. PUNITIVE DAMAGES

Appellant contends that, as a matter of law, punitive damages cannot

---

4. We note, too, that appellant neither objected to the language of the instruction nor tendered to the judge a proposed instruction on this point, thus failing to preserve this assignment of error for appellate review. Fed.R.Civ.P. 51; *see Griggs v. Firestone Tire & Rubber Co.,* 513 F.2d 851, 857 (8th Cir. 1975); *Otten v. Stonewall Ins. Co.,* 511 F.2d 143 (8th Cir. 1975).

be awarded for breach of the duty of fair representation and that, in any event, the facts of this case do not support such an award. Recognizing that there is authority supporting an award of punitive damages against a union which has breached its duty of fair representation,[5] we conclude that there is insufficient evidence in the record before us to warrant such relief. As we observed in a recent case based on similar facts:

> The Local's conduct was not the type of outrageous or extraordinary conduct for which extraordinary remedies are needed; rather, it amounted to the commonly encountered policy of favoring one group of members over another, which lies in the mainstream of unfair representation litigation. Butler was not subjected to threats of violence, harassment, physical abuse, or the scorn and ridicule of his co-workers, and there was no showing that the Local acted with any malice directed specifically at him. *Compare Richardson v. Communications Workers of America*, 443 F.2d 974, 983 n.12 (8th Cir. 1971). The federal courts should fashion remedies under the labor statutes which are necessary to achieving the goal of industrial peace. *Textile Workers of America v. Lincoln Mills*, 353 U.S. 448, 454–455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The plaintiff did not establish that punitive damages were needed to deter future misconduct or to prevent industrial strife.

*Butler v. Teamsters Local 823, supra*, 514 F.2d at 454 (footnotes omitted).

The award of punitive damages against the union must therefore be set aside.

## IV. RESTRICTION OF KITTS' TESTIMONY

Appellant assigns prejudicial error to rulings by the trial court restricting the testimony of Kitts, the President and Business Representative of Local 823. Counsel for the union had questioned Kitts regarding his conversation with the former Red Arrow employees seeking jobs at Yellow. As Kitts began to state his interpretation of the relevant provisions of the collective bargaining agreement, Judge Becker called counsel to chambers, where he explained that the construction of an unambiguous contract was solely in the court's province and that any evidence that Kitts had read the contract in a manner adverse to the employees' position could demonstrate the union's bad faith as a matter of law. It has been the union's position, both in Judge Becker's chambers and in this appeal, that Kitts' view of the employees' rights under the contract was critical to the union's effort to establish that it had acted in good faith. In other words, appellant argues that if it had been permitted to prove *why* it had not pressed Bond's grievance, the jury would not have been able to find the element of bad faith necessary for the verdict entered below.

We discern no reversible error here. In this circuit, the admissibility or exclusion of evidence lies within the sound discretion of the trial judge. *See Lowry v. Black Hills Agency, Inc.*, 509 F.2d 1311, 1313–14 (8th Cir. 1975). We need not decide whether the trial judge

**5.** *See Butler v. Teamsters Local 823*, 514 F.2d 442, 454 (8th Cir. 1975) ("[a]ssuming arguendo that there will be instances in which punitive damages are proper in a § 301 or unfair representation action * * *"); *Patrick v. I. D. Packing Co.*, 308 F.Supp. 821, 824 (S.D.Iowa 1969) (court "unwilling to say * * * that exemplary damages can never be recovered in a Section 301 action"); *cf. Richardson v. Communications Workers of America*, 443 F.2d 974, 982 (8th Cir. 1971) (employee may seek damages against a union under § 301 for mental distress resulting from union's discrimina-

tory treatment of him); *De Arroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281, 287 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970) (breach of union's duty of fair representation sounds in tort); *Tippett v. Liggett & Myers Tobacco Co.*, 316 F.Supp. 292, 298 (M.D.N.C.1970) (unfair representation suits are in nature of tort actions). The principal argument advanced for permitting punitive damages against a union in a proper case is that the claim does not arise out of the contract itself, but is founded upon the tortious breach of a statutory duty.

abused that discretion, however, because he made it clear to counsel in chambers that he would permit such testimony if defense counsel persisted, notwithstanding the court's view that Kitts' interpretation was erroneous, saying, "But if that is what happened he is entitled to tell it." The District Judge then told counsel he intended to inform the jury of the proper interpretation of the contract. After telling counsel "I conclude that it is admissible," the following exchange occurred:

The Court: So let's go ahead and you present the case like you want to, and—

Mr. Leary: Judge, I appreciate your telling me. I shall no longer go into that area.

Upon resuming trial, this line of questioning was abandoned and there was no subsequent offer of proof. Neither was any exception taken at trial to the manner in which the court ordered a chambers conference. Such issues were waived at trial. *See Armour & Co. v. Nard,* 463 F.2d 8, 12 (8th Cir. 1972).

Accordingly, the judgment is modified by deleting any reference to punitive damages; in all other respects the judgment of the District Court is affirmed.