**D. Franklin WISHART**

v.

**Paul J. McDONALD, Individually and in his official capacity as Superintendent of Schools, Town of Easton, and Secretary of the Easton School Committee, et al.**

**Civ. A. No. 73–2390–F.**

United States District Court,
D. Massachusetts.

Dec. 11, 1973.

Dan Chill, Boston, Mass., for plaintiff.

Richard A. Howard, Boston, Mass., for defendants.

## OPINION

FREEDMAN, District Judge.

This matter was heard by the Court on October 29, 1973 and November 1, 1973. It was agreed by the parties that a request for a preliminary injunction would be consolidated with the trial on the merits under Rule 65(a)(2) of the Federal Rules of Civil Procedure, and an evidentiary hearing thereafter occurred.

Arguments were heard on plaintiff's motion for declaratory and injunctive relief and on defendants' motion to dismiss as well.

Plaintiff is a 43 year old male resident of the Town of Easton, Massachusetts. He was employed as a sixth grade teacher in the Easton Public Schools from 1968 until his dismissal in June of 1973. As of September 1972, plaintiff was serving on tenure in that school system pursuant to Massachusetts General Laws, Chapter 71, § 41. Defendant McDonald is the Superintendent of Schools in Easton, and the other named defendants constitute the duly elected members of the school committee for that town.

On March 9, 1973, plaintiff met with defendant McDonald after school hours. Plaintiff was informed orally and by letter presented to him at that time, that he had been observed engaging in public conduct unbecoming to a teacher. That is, he had been observed "moving about his property on Spooner Street on many evenings with a dress mannequin and dressing and undressing that mannequin." [Pl's.Exh. 1]. Plaintiff was told that he was being removed from his teaching position as of that day, that his compensation was not being terminated, and that he should meet with the Superintendent, accompanied by counsel if he desired, to make arrangements for non-teaching duties pending the outcome of the matter. He was informed of his procedural rights and of subsequent hearings that would take place regarding suspension and dismissal.

Late in March of 1973, plaintiff and his counsel met with defendant McDonald and from that time until approximately April 23 there appear to have been attempts to resolve the matter by compromise with the school committee. Apparently these efforts proved fruitless, and on May 16, a list of formal charges was sent to plaintiff. He was advised that, pursuant to Massachusetts General Laws, Chapter 71 § 42, a private hearing would be held before the Easton School Committee concerning his

discharge as a teacher and that subsequent to said meeting a vote would be taken on whether or not he would be discharged. He was charged with conduct unbecoming a teacher consisting of the following actions:

"a. That you have on various occasions displayed and carried a dress mannequin in the public view on your Spooner Street property, have dressed said mannequin in feminine attire, and have on occasion caressed said mannequin."

"b. That your actions in the public view on your Spooner Street property in regard to the dressing and undressing of said dress mannequin in feminine attire have been on various occasions of a suggestive or lewd nature."

[See Pl's.Exh. 2.]

On June 18, the hearing was held, evidence heard from a neighbor, a police officer, and the Superintendent, all of whom had witnessed the behavior, and a vote taken resulting in the plaintiff's dismissal as teacher in the school system. Plaintiff received his salary for the entire 1972–73 school year. Plaintiff has not challenged the "procedures" followed by the Superintendent or the school committee.

The action before this Court was commenced pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985 and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Plaintiff is seeking an injunction enjoining defendants from interfering with plaintiff's rights under the First, Ninth and Fourteenth Amendments to the Constitution and further enjoining defendants from giving force and effect to the termination of the plaintiff on the basis of the evidence adduced at the hearing held on June 18, 1973 and ordering the defendants to reinstate the plaintiff to his full-time teaching position. Plaintiff also asks the Court to declare defendants' acts to be in violation of the First, Ninth and Fourteenth Amendments to the Constitution and to declare the phrase "conduct unbecoming a teacher" in M.G.L. c. 71 § 42 to be in violation of the Fourteenth Amendment. Finally, plaintiff is seeking compensatory and exemplary damages in the amount of $200,000.

### Defendants' Motion to Dismiss

Defendants move the Court to dismiss the action on the grounds that plaintiff has failed to exhaust his state remedies and has not complied with the applicable statute of limitations. Massachusetts General Laws, Chapter 71, § 43A provides:

"Any teacher or superintendent of schools, employed at discretion who has been dismissed by vote of a school committee under the provisions of section forty-two or section sixty-three or any person who has been demoted by vote of a school committee under the provisions of section forty-two A may, within thirty days after the vote of dismissal or demotion, appeal therefrom to the superior court in the county in which he was employed. The court shall advance the appeal for a speedy hearing and after such notice to the parties as it deems reasonable hear the cause 'de novo'. If the court finds in favor of the school committee, the vote of the school committee shall be affirmed; otherwise it shall be reversed and the appellant shall be reinstated to his position without loss of compensation. The decision of the court shall be final, except as to matters of law.

Amended by St.1971, c. 518."

Plaintiff took no appeal to the superior court within the 30-day period allowed by the statute and defendants assert that in failing to do so, plaintiff failed to exhaust state remedies and is thus barred from bringing the present action. Defendants also argue that the 30-day limitation on an appeal to the superior court is the applicable statute of limitations and that since plaintiff did not bring this action within that time limit, he is barred from bringing this action.

Defendants' motion to dismiss is denied. While plaintiff may be required to exhaust state administrative remedies, he is not required to exhaust state judicial remedies. See McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1962); Eisen v. Eastman, 421 F.2d 560 (2nd Cir., 1969); Potter v. McQueeney, 338 F. Supp. 1133 (D.R.I., 1972); Roumani v. Leestamper, 330 F.Supp. 1248 (D.Mass., 1971); Lucia v. Duggan, 303 F.Supp. 112 (D.Mass., 1969). To exact such a requirement from a plaintiff in a § 1983 action would be to ignore the policy behind the statute of providing a federal cause of action for alleged deprivations of civil rights. The Court notes that there is no suggestion that plaintiff did not exhaust his administrative remedies. Nor is the Court impressed by the statute of limitations argument, and it will not apply the 30-day limit to bar this action.

## Merits

In order for the Court to grant the injunctive relief requested, it must find that the school committee's reasons for dismissing the plaintiff were arbitrary or capricious. Otherwise, their actions should not be disturbed. Drown v. Portsmouth School District, 451 F.2d 1106 (1st Cir., 1971), outlined three ways in which a school committee's reasons for not renewing a non-tenured teacher's contract could be arbitrary or capricious, and I think they apply equally well to the case at bar: *First,* if the reason is unrelated to the educational process or to working relationships within the educational process; *second,* if the reason is trivial; and *third,* if the reason is wholly unsupported by a basis in uncontested fact either in the statement of reasons itself or in the teacher's file. *Drown* at 1108.

The second ground for challenge can be dismissed summarily. No one has suggested that this matter is trivial or that the defendants were being trivial in questioning the plaintiff's conduct. Nor does there appear to be any basis for challenging the committee's decision on the third ground. Plaintiff admits to the conduct, although there is some dispute as to exactly what actions took place. Very briefly, the testimony on this point was as follows.

Defendant McDonald testified he was first made aware of plaintiff's conduct in December of 1972 by a member of the school committee who had been contacted by a Mrs. Griffiths, a next-door neighbor of the plaintiff. Subsequently, McDonald talked to Mrs. Griffiths personally and to a Mr. Hughes who lived across the street from the plaintiff. He also had a conversation with the school psychologist who had become aware of plaintiff's conduct. In early March of 1973, Mr. McDonald personally observed plaintiff's behavior. At approximately eight o'clock in the evening from the Hughes home across the street from plaintiff's home, McDonald observed plaintiff carrying what he described as a dress mannequin with a negligee on it about his property. He would carry the figure from spot to spot, raise the hem occasionally, and step back and look at the article of clothing. McDonald observed plaintiff carry on this conduct in front of his house, at the side of his house, and in front of the garage which was behind the house. Defendant McDonald went to the Griffiths' home next door to plaintiff's home that same evening and observed the same behavior. He did not observe Mr. Wishart touch the object extensively.

Plaintiff testified that he did, in fact, engage in unusual conduct on his property. He described the object he would carry about as an extended camera tripod with a pillow tied around it and a dress placed over it. He admitted carrying the object from spot to spot and looking at it. He denied touching the object other than to move it or to arrange the dress. Most of the activity took place on the side of his house, sometimes in back, and very few times in front. He admitted having once taken it in front of his house and placing it on top of his car which was parked in

the street. The conduct always took place at night. He testified he did not believe neighbors observed him, but also admitted, "I know it could happen but at that time I had convinced myself that no one saw me." (Tr., p. 33). Plaintiff stated that the conduct first started in the late summer or early fall of 1971 on an irregular basis. In October of 1972 he began doing it regularly, once a week, while his wife attended an evening class. In the middle of December, 1972, plaintiff was told by the school psychologist that she had been made aware by someone in plaintiff's neighborhood of strange conduct taking place on his property. She offered him help which he refused. He discontinued the conduct for two weeks and then decided that ". . . if I was careful, I wouldn't be seen, and I started up again, yes." When defendant McDonald relieved plaintiff from his duties as teacher on March 9, the conduct ceased according to plaintiff. He began seeing a psychiatrist and is receiving treatment to date.

Three neighbors also testified before the Court. They had all observed the conduct taking place. Their testimony was approximately the same as to what they each observed. One neighbor lived next-door and the other couple lived across the street. They all testified they had seen plaintiff caress the object in the area of the breast on occasion. There was some uncertainty as to whether or not some simulated legs had been suspended from the object and as to what type of dress or nightgown was used. They had each observed the conduct the night the object was brought to the front of the house and placed on the top of plaintiff's car which was parked in the street. Two witnesses testified they observed plaintiff engaging in what they interpreted to be a form of masturbation. There was no testimony that he at any time exposed himself. At least one neighbor testified the area was well lit. This incident took place very late in the evening and appears to have been the most open and most suggestive conduct which any of the neighbors had observed plaintiff engage in.

It is not clear from the record which neighbor testified before the school committee, although the record does indicate that one did indeed testify. Defendant McDonald did testify before the school committee, as did a police officer who observed the conduct. The record of the hearing before the school committee was never placed before the Court and the Court does not know what the testimony consisted of other than that defendant McDonald explained his reasons for recommending dismissal. Plaintiff has not proven that the reason for dismissal was "wholly unsupported by a basis in uncontested fact either in the statement of reasons itself or in the teacher's file."

The first ground, that is that the reason for dismissal is unrelated to the educational process or to working relationships within the educational process, is more troublesome, and plaintiff has placed major emphasis on this ground in challenging the school committee's decision. Plaintiff offered testimony from the psychiatrist who is treating him. He explained that he had diagnosed plaintiff's problem as a "personality disorder" which probably developed in adolescence and is manifested by plaintiff displacing his sexual interests into a dress. He stated that plaintiff had controlled his behavior successfully until the unfortunate death of his first child at the age of one month. At that time plaintiff became depressed and could not control his behavior. This occurred about three years ago. The doctor stated that plaintiff's prognosis is very good and that "people who have this particular disorder and have been able to marry and have a family [as the plaintiff has] generally have an excellent prognosis." [Tr., p. 43.] The doctor further testified that, in his opinion, plaintiff's personality disorder would not affect his ability to perform all the duties of a sixth grade teacher and that he did not consider plaintiff to be a danger to anyone. The doctor also testified, however, that this opinion would change if he knew the plaintiff had caressed the object. Such conduct would be uncharacteristic of one with the diagnosis pre-

viously explained. One with such a diagnosis would only look at the object and perhaps masturbate, but would not caress it.

Further evidence was introduced through the principal of the school where plaintiff teaches, consisting of written evaluations of plaintiff's performance as a teacher. The witness had prepared these evaluations after personally observing plaintiff's classroom performance. He was rated generally as an above-average teacher and, in the latest of the evaluations, he was described as an "excellent" teacher.

Plaintiff argues that the evidence indicates his conduct in no way relates to his ability to function as a teacher and that to dismiss him for this unrelated conduct was impermissible. Even if the Court were to agree (which it is not altogether prepared to do), that plaintiff's problem would in no way reflect on his performance in the classroom, there is still the problem of notoriety and its effect on "relationships within the educational process." The extent of the pre-March 9 notoriety of plaintiff's conduct is uncertain as is the extent of the notoriety to date. Defendant McDonald testified that his determination to recommend dismissal was based in part on his experience in small town school systems and, in particular, on the rapidity with which such conduct would gain notoriety in a small town such as Easton. He also felt it would be most difficult to assign children to plaintiff's class in light of probable parental opposition. He testified that to date no one, other than the three neighbors, one of whom is also a school teacher in Easton, and the school officials, ever complained or discussed the matter with him. He did become aware through his wife that there was some knowledge of the matter in his own neighborhood which was some distance from plaintiff's neighborhood. McDonald testified that he explained his reasons for the recommendation to the school committee.

■ The Court feels there was a basis, if somewhat meager, for McDonald's belief that the conduct had, or certainly would in the future, gain a degree of notoriety which would damage plaintiff's effectiveness as a teacher in the school system and his working relationships within the educational process. It cannot be said that the school committee acted arbitrarily or capriciously in sharing in that opinion and following the recommendation to dismiss. Whether or not some of the notoriety was caused by the defendants' investigations and hearings cannot change that result. There is no evidence that any of the defendants ever intentionally or maliciously made a public issue of the matter. They certainly had the right and perhaps the duty to investigate the charges against the plaintiff and to hold private hearings concerning them. This is indeed an unfortunate case. Plaintiff is to be commended for his courage in facing his problem and seeking professional help and for appearing before this Court at a public trial to try and regain that which he feels has been wrongfully taken from him. Whether or not the matter could have been handled more equitably on the part of the defendants would be a matter of conjecture for the Court. It would be error, however, for the Court to substitute any opinion other than the school committee's unless the committee has acted arbitrarily or capriciously. The evidence does not warrant such a finding.

■ The Court is not impressed by plaintiff's argument that the defendants' actions constituted an unconstitutional invasion of his right to privacy. However convincing his argument may be that private sexual conduct is protected from governmental intrusion, the evidence in this case is ample that on various occasions the conduct was public in nature or at least was carried on with such reckless disregard of whether or not he was observed that it lost whatever private character it might have had.

Finally, plaintiff asks the Court to declare the language "conduct unbecoming a teacher" as it appears in M.G.L. c. 71

§ 42 to be unconstitutionally vague. Whether or not this is a determination which can be made by a single judge is questionable and whether or not it belongs in the federal court at all in the first instance is even more questionable. The statute could easily be interpreted by the state court to refer only to conduct which is job related. Such a construction would most probably save the statute from being attacked as vague. See Morrison v. State Board of Education, 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969). In light of the safeguards already provided by *Drown,* as applied in this case, the Court does not feel such a determination is necessary before it acts on the other requested relief and declines to take any action on plaintiff's request to declare that portion of M.G.L. c. 71 § 42 unconstitutionally vague.

Consequently, plaintiff's requests for injunctive and declaratory relief are denied.